AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 2-12-2020)

## UNITED STATES DISTRICT COURT

for the
Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| Information associated with One Target | ) | Case No.   MJ21-323 |
| Accounts/Identifiers, for Investigation of 21 | ) | |
| U.S.C. § 841(a)(1), 846, and Other Offenses | ) | |

### APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

I, a federal law enforcement officer or an attorney for the government, request a search warrant and pen-trap order, and state under penalty of perjury that I have reason to believe that on the person or property described in Attachment A, located in the Western District of Washington, there is now concealed property and evidence described in Attachment B.  This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crip P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § § 841(a)(1) and 846 | Drug trafficking, conspiracy |

The application is based on the facts set forth in the attached affidavit, which is incorporated herein by reference with all attachments and exhibits.  Pursuant to 18 U.S.C. § 3123(a)(1), Exhibit 1 to the affidavit includes a certification from an attorney from the government that the requested information is relevant to an ongoing criminal investigation.

☒ Delayed notice of ___ days (give exact ending date if more than 30 days: 10/08/2021) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 41, this warrant is presented by:
☒ by reliable electronic means; or ☐ telephonically recorded

_____
*Applicant's signature*

Geoffrey Provenzale, Special Agent
*Printed name and title*

☐ The foregoing affidavit was sworn before me and signed in my presence, or

☒ The above-named officer provided a sworn statement attesting to the truth or the foregoing affidavit by Telephone.

Date: <u>May 28, 2021</u>

_____
*Judge's signature*

Brian A. Tsuchida, United States Magistrate Judge
*Printed name and title*

City and State: <u> Seattle, Washington</u>

USAO #2021R00668

**ATTACHMENT A**

**Property to Be Searched and Subscriber/Subject Information**

1.    Records and information associated with the cellular phones:

a.    **Target Telephone 2**, assigned call number **425-399-4118** with International Mobile Subscriber Identity (IMSI) 310260043207650.  **TT2** has a listed subscriber of "Shanna Mclean" and has service provided by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2.    The property to be searched includes:  (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

3.    "T-Mobile" is identified in Attachment B as the "**Wireless Provider.**"

**ATTACHMENT B**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127.  As such, this warrant authorizes the collection of subscriber records, pen-trap data, and cell site data information regarding the Target Telephone.  **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).**  Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below.  *See* 18 U.S.C. § 3103a(b)(2).

I.   <u>Section I</u>:  **Information to be Disclosed by Wireless Provider**

    1.   **Subscriber/Account Information.**  The following non-content information about the customers or subscribers associated with the Account listed in Attachment A:

        a.   Names (including subscriber names, user names, and screen names);

        b.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        c.   Local and long distance telephone connection records for 60 days prior to May 28, 2021;

        d.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions for 60 days prior to May 28, 2021;

        e.   Length of service (including start date) and types of service utilized;

        f.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital

ATTACHMENT B
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers

2   ("IMSI"), or International Mobile Equipment Identities ("IMEI");

3              g.      Other subscriber numbers or identities (including the registration

4   Internet Protocol ("IP") address); and

5              h.      Means and source of payment for such service (including any credit

6   card or bank account number) and billing records.

7       2.   **Pen Register/ Trap and Trace Data and Associated Subscriber Records**
        **to Be Provided for a Period of 45 days from May 28, 2021.**

8

9              a.      The Wireless Provider shall install and monitor pen-trap devices to

10  record, decode, and/or capture dialing, routing, addressing, and signaling information

11  associated with each communication to or from the Target Telephone including the date,

12  time, and duration of the communication, and the following, without geographic limit and

13  without notice to the subscriber:

14  (i)    IP addresses associated with the cell phone device or devices used to send or

15         receive electronic communications;

16  (ii)   Any unique identifiers associated with the cell phone device or devices used

17         to make and receive calls with the cell phone number described in

18         Attachment A, or to send or receive other electronic communications,

19         including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

20  (iii)  IP addresses of any websites or other servers to which the cell phone device

21         or devices connected; and

22  (iv)   Source and destination telephone numbers and email addresses.

23             b.      On a 24-hour-a-day basis, for the duration of the authorized pen-trap

24  devices, the Wireless Provider shall provide the following records for those subscribers

25  whose identifiers are obtained pursuant to the use of the pen-trap devices:  published or

26  non-published subscriber names and addresses, including billing addresses.

27

28

ATTACHMENT B
USAO #2021R00628 (TT2)

3.   **Historical Cell Cite Location Information.**

a.   All records and other information (**not including the contents of communications**) relating to wire and electronic communications sent or received by the Account from **March 4, 2021, through May 28, 2021**, including:

i.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii.   historical cell site information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.  This information is to be provided irrespective of the application, name, or report utilized by the Wireless Provider.  Accordingly, this information includes the following data sets to the extent that they are collected by the Wireless Provider:  RTT, PLU, PCMD, NELOS, EVDO, TruCall, ALULTE, and Timing Advance.

b.   The physical address and coverage maps of cell towers used by the Target Telephone.

4.   **Prospective Cell Site Location Information.**

a.   All information about the location of the Target Telephone described in Attachment A for **a period of 45 days from May 28, 2021,** during all times of day and night.  This information includes: precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.

b.   The physical address and coverage maps of cell towers used by the Target Telephone.

5.   **Prospective E-911/GPS and Cell Site Triangulation Information.**

a.   All information about the location of the Target Telephone described in Attachment A for **a period of 45 days from May 28, 2021,** during all times of day and night.  This information includes: all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which

"cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.

        b.     The physical address and coverage maps of cell towers used by the Target Telephone.

To the extent that the location information described in the previous paragraphs (hereinafter, "Location Information") is within the possession, custody, or control of the Wireless Provider, the Wireless Provider is required to disclose the Location Information to the government pursuant to this warrant.  In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), The Wireless Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Wireless Provider's services.  The government shall compensate the Wireless Provider for reasonable expenses incurred in furnishing such facilities or assistance.

II.    **Section II:  Information to Be Seized by the Government**

1.    All information described above in Section I that constitutes evidence of violations of Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), and/or conspiracy to commit that same offense in violation of 21 U.S.C. § 846 involving Shanna Mclean and others known and unknown.

2.    All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

3.    All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

4.    Location Information regarding the Target Telephone.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under

ATTACHMENT B
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    government control) are authorized to review the records produced by the Wireless

2    Provider in order to locate the things particularly described in this Warrant.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B
USAO #2021R00628 (TT2)

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT AND PEN-TRAP ORDER

STATE OF WASHINGTON        )
                           )        ss
COUNTY OF KING             )

I, Geoffrey Provenzale, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the following cellular telephone:

a.     **Target Telephone 2 (TT2)**, assigned call number **425-399-4118** with International Mobile Subscriber Identity (IMSI) 310260043207650.  **TT2** has a listed subscriber of "Shanna Mclean" and has service provided by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.  **TT2** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.  Investigators believe Shanna Mclean is the user of **TT2**.

2.     The wireless telephone service provider identified in Paragraph 1(a) is referred to throughout this affidavit and attachments as the "wireless provider," "the wireless service provider," or "the wireless service provider identified in Attachment A."

### ECPA

3.     The Court has jurisdiction to issue the proposed warrant under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

### Pen Register Act

4.     Because this warrant seeks the prospective collection of information that falls within the statutory definitions of information collected by a "pen register" and/or

"trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to comply with the Pen Register Act, 18 U.S.C. §§ 3121-3127.

5.      The Court has jurisdiction to issue the requested pen-trap order because it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2).  Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i).

6.      This application includes all the information required by the Pen Register Act. *See* 18 U.S.C. §§ 3122(b) & 3123(a)(1).  Namely, Exhibit 1 to this application is a certification from Assistant United States Attorney Vincent T. Lombardi that (1) identifies HSI and DEA as the law enforcement agencies conducting the investigation and (2) certifies the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by those agencies.  18 U.S.C. § 3122(b).  The Assistant United States Attorney is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

7.      A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3).  A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

8.      In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls.  Similar principles apply to other kinds of wire and electronic communications such as emails, text messages, connection logs, and data transfers.  The prospective location data sought in this application constitutes "dialing, routing, addressing, and signaling information" covered by the Pen Register Act.  Accordingly,

Affidavit of SA Provenzale - 2
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the requested warrant will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with the Target Telephone without geographic limit.

9.      The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order through Attachment B of the requested warrant that the wireless service provider described in Attachment A and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this warrant furnish, upon service of the warrant, information, facilities, and technical assistance necessary to install the pen/trap, including installation and operation of the pen-trap unobtrusively and with minimum disruption of normal service.  Any entity providing such assistance shall be reasonably compensated by the HSI or DEA, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the warrant.

10.      **Through this application, the United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).**

## AGENT BACKGROUND

11.      I am employed as a Special Agent (SA) with the United States Drug Enforcement Administration (DEA), and have been so employed since April 2015.  I am currently assigned to the Seattle Field Division.  I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Section 801 et seq. and Title 18, United States Code, Section 2516(1).  In this capacity, I investigate violations of the Controlled Substance Act, Title 21, United States Code, Section 801 et seq., and related offenses.  I have received specialized training in the enforcement and investigation of the Controlled Substance Act. I have received over 620 hours of classroom training including but not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes,

Affidavit of SA Provenzale - 3
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances.

12.     In my role as a Special Agent for the Drug Enforcement Administration, I have negotiated for and purchased narcotics acting in an undercover capacity.  I have participated in narcotics investigations (i.e., heroin, fentanyl, cocaine, marijuana, and methamphetamine), which have resulted in the arrest of individuals and the seizure of narcotics and/or narcotic-related evidence and the forfeiture of narcotics related assets.  I have been involved in the service of search warrants as part of these investigations.  As a result of my experience in serving these search warrants, I have encountered and have become familiar with various tools, methods, trends, paraphernalia and related articles utilized by various traffickers in their efforts to import, conceal, and distribute controlled substances.  I am also familiar with the various methods of packaging, delivering, transferring, and laundering drug proceeds.  Additionally, through my training and experience, I can identify illegal drugs by sight, odor, and texture.

13.     I have also worked on drug investigations involving the use of court-authorized wiretaps under Title III.  In that capacity, I have had the opportunity to monitor, listen to, and review transcripts and line sheets in both English and Spanish (prepared by linguists) documenting the content of hundreds of intercepted conversations involving the trafficking of cocaine, methamphetamine, heroin, and other narcotics, by persons who used some form of code to thwart law enforcement.  I have also interviewed defendants at the time of their arrest and have debriefed, spoken with, and/or interviewed numerous drug dealers or confidential sources (informants) at proffer and safety-valve interviews who were experienced in speaking in coded conversation over the telephone. In many of these interviews and debriefings, I was able to speak with these drug traffickers about specific conversations in which they were intercepted pursuant to electronic surveillance.  From these interviews, and also from discussions with other experienced investigators, I have gained knowledge regarding the various methods,

Affidavit of SA Provenzale - 4
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

techniques, codes, and/or jargon used by drug traffickers in the course of their criminal activities, including their use of firearms to protect their narcotics-related activities and use of cellular telephones as a means to facilitate communications while avoiding law enforcement scrutiny.

14.     I have written affidavits in support of court-authorized federal warrants and orders in the Western District of Washington for T-III interceptions, GPS tracking of telephones, search warrants, and tracking of vehicles.  Additionally, I have testified in grand jury proceedings, written investigative reports, and conducted and participated in numerous interviews of drug traffickers with various roles in drug organizations, which has provided me with a greater understanding of the methods by which drug trafficking organizations operate.

15.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and pen-trap, and therefore does not set forth all of my knowledge about this matter.  This affidavit describes intercepted Spanish-language communications.  DEA linguists have translated those communications into English.  Except where otherwise indicated, the quotations of communications below are the English translations of the original Spanish communications.

16.     Based on the facts set forth in this affidavit, there is probable cause to believe that **TT2** has been used in furtherance of the following federal criminal offense in the Western District of Washington: Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), and/or conspiracy to commit that same offense in violation of 21 U.S.C. § 846.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

Affidavit of SA Provenzale - 5
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**PROBABLE CAUSE**

2   17.     During 2019 and into 2020, the United States, including the DEA,

3   conducted a criminal investigation of a drug trafficking organization (DTO) operating in

4   the Western District of Washington which distributed narcotics, including heroin,

5   methamphetamine, cocaine, and fentanyl.  Investigators believe Delmer Velasquez-

6   Licona was a redistributor for the DTO, and Shanna Mclean was a secondary

7   redistributor of the DTO, as described herein.

8   18.     During the investigation, investigators received multiple court

9   authorizations in the Western District of Washington to intercept wire and electronic

10  communications to and from phones utilized by members of the DTO.  As it pertains to

11  this application, these include:

12  19.     On December 6, 2019, the Honorable U.S. District Court Judge Ricardo S.

13  Martinez signed an order authorizing the interception of the wire and electronic

14  communications over 206-231-8342.[1]  Interception of the phone began on or about

15  December 6, 2019.  Delmer Velasquez-Licona, a redistributor for the DTO, used 206-

16  231-8342.  Interception of the phone ended on January 4, 2020.

17  20.     During the investigation, agents have seized multiple pounds of heroin

18  (approximately 1½ kilograms) directly from Velasquez-Licona and approximately

19  20,000 counterfeit "M30" pills containing fentanyl (equal to approximately two

20  kilograms gross weight) from his source of supply, Rodrigo Alvarez-Quinonez.

21  21.     On July 29, 2020, a federal Grand Jury returned two indictments charging

22  15 defendants in the investigation with drug-trafficking crimes.  Those defendants

23  (including Velasquez-Licona and Alvarez-Quinonez) were arrested on those charges on

24  August 5, 2020, and are currently pending legal proceedings in Western Washington.

25

26

27  [1] The phone was originally assigned phone number 206-231-8342; however, according to T-Mobile, the phone
    number was changed on December 20, 2019 to 206-531-9979.  The IMSI remained the same for the phone and T-
28  Mobile continued to honor the T-III order until its expiration.  Delmer Velasquez-Licona was the user of the phone
    even after its change of number.

Affidavit of SA Provenzale - 6
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Suspected narcotics transaction with Mclean**

22.     During late December 2019, tracking data for a phone utilized by Alvarez-Quinonez (425-496-3287) indicated the phone was in the Fresno/Selma area of California.  During this time, Alvarez-Quinonez directed Velasquez-Licona to meet with various "customers" to provide narcotics.  Two transactions between Velasquez-Licona and Shanna Mclean that were arranged by Alvarez-Quinonez are described below.

23.     On December 26, 2019, intercepted communications indicated that Velasquez-Licona conducted a narcotics transaction with the user of 425-948-0301, an English-speaking female.  On December 26, 2019, at approximately 12:14 p.m., Velasquez-Licona (206-531-9979) placed an outgoing call to Alvarez-Quinonez (425-496-3287) (Session #876 for 206-531-9979).[2]  During the call, Alvarez-Quinonez stated to Velasquez-Licona, "A girl is calling me saying she needs four hundred [400]."  I believe this is a reference to either $400 worth of a narcotic substance, or approximately 400 "M30" pills.  After this suspected transaction took place, investigators identified the possible user of phone number 425-948-0301 as Shanna Marie Mclean (born in 1981), in part because the phone was subscribed to "Shanna Mclean."  Agents then identified Mclean during a subsequent transaction, described below.  Although she was unidentified prior to the first transaction, I refer to the user of 425-948-0301 as Mclean to avoid confusion.

24.     On January 3, 2020, at approximately 2:20 p.m. (Session #2331), Velasquez-Licona (206-531-9979) placed a call to Mclean (425-948-0301).  During the call, Velasquez-Licona asked Mclean if she remembered him.  Mclean stated she did.  Velasquez-Licona stated that his boss had sent him Mclean's number again.  Velasquez-Licona then stated he would be home in an hour and stated he could meet her there.  Mclean stated she remembered where he lived (likely due to the transaction on December 26, 2019) and would meet there.

---

[2] All "session numbers" referred to herein relate only to 206-531-9979, as that was the only phone investigators had authorization to intercept, at the time of the transactions described herein.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

25.     On the same date, at approximately 4:04 p.m., Mclean (425-948-0301) sent a text to Velasquez-Licona (Session #2353) which read (in English), "Hi this is Shanna I'm just letting you know that I am on my way driving sorry if I'm running a little bit late I had to pick up my daughter from school but I just want you to know I'm on my way to your right now okay shouldn't take longer than 30 minutes thanks again for meeting me talk soon."

26.     At approximately 4:14 p.m., an investigator observed, via remote video, a green Nissan pickup truck associated with Jose Escoto-Fiallos (a known narcotics associate of Velasquez-Licona) arrive on the street in front of Velasquez-Licona's known residence.  At approximately 4:19 p.m., Velasquez-Licona (206-531-9979) sent a text (Session #2357) to Mclean (425-948-0301) that read, "I'm home."

27.     At approximately 4:25 p.m., an investigator observed, via remote video, Velasquez-Licona exiting the passenger side of the Nissan pickup truck.  At approximately 4:47 p.m., Mclean (425-948-0301) sent a text (Session #2368) to Velasquez-Licona which read, "I'm on greenwood so I'm almost to the same spot as last time ok."

28.     Investigators established surveillance in and around the parking lot of the Saltoro Restaurant located at 14051 Greenwood Ave N, Seattle, WA, in anticipation of the meeting.[3]  Surveillance personnel had the vehicle description of Mclean's Mazda sedan (previously observed on surveillance) and a Washington Department of Licensing (DOL) photograph of Mclean.

29.     At approximately 4:55 p.m., an investigator observed a maroon Mazda sedan bearing WA/BRB8284 parked in the Saltoro parking lot and confirmed the license plate number.  According to DOL, the vehicle was (at the time) registered to Shanna

---

[3] The restaurant is located just to the north of what was then Velasquez-Licona's residence.  During the investigation, Velasquez-Licona or his associates would, at times, conduct narcotics transactions in the Saltoro parking lot.

Affidavit of SA Provenzale - 8
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Marie Mclean at 7720 Timber Hill Dr., Apt B6, Everett, WA.  The investigator saw a child exit the front passenger seat of the Mazda and get into the rear seat of the vehicle.

30.     At approximately 4:55 p.m., Mclean (425-948-0301) sent a text (Session #2379) to Velasquez-Licona that read, "Here, you can get in the front seat next to me it's just me and my daughter in the back."

31.     Moments later, an investigator observed, via remote video, a male wearing dark clothing walk from the area of Velasquez-Licona's residence towards the parking lot of the Saltoro Restaurant.

32.     Shortly thereafter, an investigator approached the Mazda on foot and observed Velasquez-Licona standing at the driver's window of the Mazda, speaking through the open window with the driver/occupant.  The investigator observed the female driver/occupant's face and was able to hear her speaking with Velasquez-Licona in English.  The investigator positively identified the driver/occupant of the Mazda as Shanna Marie Mclean, via comparison with her Washington DOL photograph.

33.     Shortly thereafter, an investigator reported that Velasquez-Licona had walked away from the Mazda.  An investigator observed Velasquez-Licona return to his apartment complex on foot.

34.     At approximately 5:05 p.m., an investigator reported the Mazda was departing the Saltoro parking lot southbound on Greenwood, Ave N.  An investigator stated he could observe Mclean through her open driver's window.  An investigator also captured remote video of Mclean through her driver's window as she departed the area.

35.     On the same date, at approximately 6:14 p.m. and 7:06 p.m., Velasquez-Licona (206-531-9979) received incoming calls from Alvarez-Quinonez (425-496-3287). During the calls (Sessions #2391 and #2399), Velasquez-Licona and Alvarez-Quinonez confirmed "the girl" (Mclean) again received "400" and paid approximately $1500 to Velasquez-Licona but was short by "500."  Based on my training and experience, and the investigation to date, I believe this information indicates that Mclean received

Affidavit of SA Provenzale - 9
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

approximately 400 counterfeit "M30" pills containing fentanyl for approximately $5 per pill.  I believe this happened on both occasions and was directed by Alvarez-Quinonez.

**Information regarding Mclean's residence**

36.    Based on intercepts, investigators believe that Mclean resided in Everett, Washington.  Information obtained from T-Mobile via subpoena for 425-948-0301 listed "Shanna Mclean" as the subscriber, with a listed address of "7720 Timber Hill Drive, Everett, Washington."  As stated above, the Mazda that Mclean was observed in during the suspected narcotics transaction was registered to "Shanna Marie Mclean" at "7720 Timber Hill Dr., Apt. B6, Everett, Washington."

37.    Further, Mclean lists "7720 Timber Hill Dr., Apt. B6, Everett, Washington" as her address on her Washington driver's license.  On March 26, 2020, an investigator travelled to the above address, and observed the Mazda parked in the parking lot of the apartment complex.

38.    On July 13, 2020, investigators established surveillance at the address.  An investigator noted that Mazda was again parked at the apartment parking lot.  On the same date, at approximately 3:32 p.m., I knocked on the door of Apartment B6.  A female spoke to me from the inside of the apartment, though I did not observe her.  In an attempt to conduct a ruse, I informed the female that I was looking for "Michelle."  The female responded, "This isn't Michelle's house, this is Shanna's house."  Investigators then terminated surveillance.

39.    On August 3, 2020, based on the above information, the Honorable Mary Alice Theiler, United States Magistrate Judge, issued a search warrant for 7720 Timber Hill Dr., Apt. B6, Everett, Washington, as part of a larger "take down" of the investigation.  However, due in part to the ongoing COVID-19 pandemic, agents did not execute the search warrant at Mclean's residence, and did not contact Mclean as part of the investigation.  As noted above, both Velasquez-Licona and Alvarez-Quinonez were arrested on August 5, 2020 and are currently pending judicial proceedings in this District.

Affidavit of SA Provenzale - 10
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Information regarding current Homeland Security Investigations (HSI), Seattle Police Department (SPD), and DEA investigation**

40.     Since approximately January 2021, law enforcement agencies in the Western District of Washington have been investigating a transnational narcotic smuggling organization involved in the distribution of large quantities of narcotics in the Western District of Washington.  Through physical surveillance, GPS search warrants authorized by a King County Superior Court Judge, law enforcement and public database checks, and other investigative techniques, agents and officers identified a location in Bellevue, Washington ("the Target Residence") as one that was being utilized in furtherance of narcotics trafficking activity.

41.     In March 2021, a King County Superior Court Judge found probable cause that the crime(s) of Delivery of Fentanyl and Methamphetamine (RCW 69.50.401) and Possession with Intent to Deliver Fentanyl and Methamphetamine (RCW 69.50.401), have been committed, in King County, Washington and authorized search warrants for multiple locations and vehicles, including the Target Residence.  Law enforcement executed the search warrants and encountered an individual ("the stash house operator") at the Target Residence.  A search of the Target Residence resulted in the discovery and seizure of more than 50 pounds of blue "M30" pills suspected to contain fentanyl, more than 10 pounds of methamphetamine, and more than $300,000 in U.S. Currency.  A money counter, drug ledgers, scales, and dominion and control documents for the stash house operator were also located.

42.     Post-*Miranda*, the stash house operator admitted knowledge of the narcotics inside the Target Residence and told law enforcement that he/she would receive bulk quantities of narcotics from couriers and would redistribute those narcotics to other individuals in the Western District of Washington.  The stash house operator further stated that one of the individuals he/she would distribute narcotics to went by the name "Shanna."  The stash operator told law enforcement that Shanna resided at an apartment complex in Everett, Washington on Timber Hill drive.  Investigators noted that within a notebook/drug ledger located in the Target Residence, the address "7720 Timber Hill Dr"

was written.  Through law enforcement and public database checks, and the previous investigation noted above, investigators identified a Shanna Mclean as residing at 7720 Timber Hill Drive.  Investigators obtained Mclean's Washington driver's license photo and showed it to the stash house operator, who positively identified the photo as depicting the individual he/she knows as "Shanna."  Law enforcement and public records checks further indicated that telephone number 425-948-3243 was actively associated with Shanna Mclean.

43.     Although the stash house operator indicated he/she was willing to provide information to law enforcement, the stash house operator later cut off contact with law enforcement and appears to have fled the area.

44.     DEA then subpoenaed subscriber and toll records for 425-948-3243. According to T-Mobile, 425-948-3243 was activated on July 20, 2020, with a listed subscriber of Shanna Mclean at 7720 Timber Hill Dr., Everett, WA 98203-6988.  Further, according to toll records, 425-948-3243 had 13 common contacts with 425-948-0301 (Mclean's intercepted and last known phone).  I believe this information indicates that Shanna Mclean uses 425-948-3243.

45.     Further, I have corroborated the stash house operator's information (indicating Mclean is still involved with narcotics trafficking) by obtaining both a police report and recent phone toll information.

46.     First, I have obtained an Arlington Police Department (APD) report which notes that on July 10, 2020, Mclean was detained by Arlington Police after they observed a suspected narcotics transaction between Mclean and a male identified as David Coffman.  On the aforementioned date, after exiting the rear passenger seat of a white BMW that Coffman was driving (bearing Washington license plate BPZ9560), Mclean was observed by APD entering into a Maroon Cadillac (bearing Washington temporary registration A1407815) with a medium sized black box.  APD contacted Mclean after the transaction.  Mclean then stated to an APD officer that she had purchased "drugs" from Coffman.  Mclean was then read her *Miranda* Rights and stated she understood them and

Affidavit of SA Provenzale - 12
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that she wanted to keep speaking with Officers.  Mclean then stated she had just bought heroin and methamphetamine from Coffman.  A state search warrant was later obtained for the maroon Cadillac, which Mclean had entered into after the suspected narcotics transaction.

47.     Upon executing the warrant, the black box was located in the Cadillac. Within the box was $805 in U.S. currency, approximately 45 "M30" pills believed to contain fentanyl, 23.5 grams of methamphetamine (field test positive), and 5.7 grams of heroin (field test positive) were located.  Additionally, a black jacket was located lying on top of the black box.  Within the jacket, approximately 27.9 grams of methamphetamine (field test positive), and 25.1 grams of heroin (field test positive) were located.

48.     I also have analyzed some of the contacts which Mclean's suspected phone (425-948-3243) had been in contact with.  I noted that according to toll information 425-948-3243 had been in contact with Mexico based phone number 52-662-395-1017, with the last contact occurring on February 15, 2021.

49.     I believe this is significant as the aforementioned Mexico based number was known to be associated with narcotics trafficking prior to the HSI seizure from the Target Residence.  Specifically, the Seattle Police Department (SPD) has a confidential source (CS) who has stated that he/she would call this same Mexican phone number, 52-662-395-1017 when he/she needed to obtain narcotics.  After calling the Mexican based phone number, the CS stated he/she was then directed to the aforementioned stash house operator.[4]

---

[4] The CS has provided reliable information over the course of multiple months and has worked with law enforcement in a previous investigation.  SPD has stated to me that the CS is not being paid in this investigation and that the CS understands that he/she must provide only truthful information to law enforcement investigators, and further understands that failure to do so, or providing false information, will lead to referral of felony drug charges stemming from a recent arrest.  SPD has stated to me that the CS has been associated with narcotic traffickers for more than 5 years; used and sold drugs, and is familiar with price, appearance, etc. To my knowledge, the CS has never given false information to SPD, and the information he/she has provided to SPD has proved to be true.  The CS's criminal history consists of prior VUCSA related felonies.  The specific crimes and dates of convictions are not included in this affidavit to protect the identity of the CS.  The CS has stated he/she wishes to remain anonymous for fear of reprisals and retribution.

Affidavit of SA Provenzale - 13
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

50.     After analyzing tolls for 425-948-3243, I noted from March 15, 2021, until March 31, 2021, phone number 425-948-3243 contacted 66 unique numbers more than ten times.  However, according to the same toll data, from April 1, 2021, through the end of the data (April 21, 2021), the phone had only communicated with four unique numbers more than ten times.  I believe this indicates Mclean was in the process of "transitioning" to a new phone, likely due to the above-noted seizure at the Target Residence in March 2021.

**Information regarding TT2**

51.     After obtaining the information described above, I conducted a toll analysis on nine of the most frequent contacts for 425-948-3243 in an effort to identify a possible new phone number for Mclean.[5]  The data I analyzed to determine the top contacts was from March 1, 2021 (approximately one month before the use of 425-948-3243 appeared to slow) through April 21, 2021 (the last date for which DEA had data at the time of my analysis).  Upon receiving subpoena responses back for all nine contacts, I conducted analysis of any phones the numbers had in common from March 15, 2021 (approximately 15 days before 425-948-3243's use began to slow) through May 11, 2021 (the last toll data provided).  I observed that three of the phones had been in contact with **TT2** (425-399-4118) beginning on March 19, 2021.

52.     Noting that some of the numbers in common were frequent contacts of 425-948-3243, DEA requested subscriber and toll information for **TT2**.

53.     According to T-Mobile, **TT2** was activated on March 4, 2021.  The phone is also subscribed to Shanna Mclean at 7720 Timber Hill Dr., Everett, WA 98203-6988, consistent with her previous phones over the two investigations.  Further, **TT2** has over 50 contacts in common with 425-948-3243, the phone I believe **TT2** "replaced."  Based upon all these factors, and my training and experience, I believe **TT2** is a new contact

---

[5] It should be noted that these were not the "top nine most frequent contacts" but nine of the top fifteen most frequent contacts for 425-948-3243.  For the other six frequent contacts, I was still awaiting toll data at the time of the toll analysis.

Affidavit of SA Provenzale - 14
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

number for Shanna Mclean.  I further believe, based on information from the stash house operator and previous intercepts of Mclean, that Mclean transitioned to a new phone after the above-mentioned seizure in March 2021 in an effort to avoid detection and thwart law enforcement.  Further, I believe, based on previous intercepts of Mclean, she utilizes her phones for narcotics activity.  Recently, investigators have observed none of Mclean's known vehicles at her known address of 7720 Timber Hill Dr., Everett, WA.  I believe this indicates she may have moved.  I further believe that a tracking authorization for **TT2** will enable investigators to observe Mclean at close proximity as well as any new residences, vehicles, or narcotics associates now associated with Mclean that were previously unknown to investigators.

### BACKGROUND INFORMATION CONCERNING CELLPHONES

54.	Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers -- as transmitted from a cellular device to a cellular antenna or tower -- can be recorded by pen-traps and indicate the identity of the cellular device making the communication without revealing the communication's content.  The IMSI number for the **Target Telephone** is set forth above.

55.	Based on my training and experience, I know that when a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course.  The unique identifiers -- as transmitted from a cell phone to a cellular antenna or tower -- are like the telephone number of an incoming call.  They can be

Affidavit of SA Provenzale - 15
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content.  In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

56.     Based my training and experience, I know that a cell phone can also be used to exchange text messages with email accounts.  The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

57.     Based on my training and experience, I know that cellular phones can connect to the internet via a cellular network.  When connecting through a cellular network, internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI.  Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication.  Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

58.     In my training and experience, I have learned that the wireless provider listed in Attachment A is a company that provides cellular telephone access to the general public.  I also know that certain providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data (also known as GPS data or latitude-longitude data) and cell-site data (also known as "tower/face information" or cell tower/sector records).  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using

data from several of the provider's cell towers.  Cell-site data identifies the cell towers (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

59.    Based on my training and experience, I know that the wireless provider listed in Attachment A can collect E-911 Phase II data about the location of the **Target Telephone**, including by initiating a signal to determine the location of the **Target Telephone** on the wireless provider's network or with such other reference points as may be reasonably available.

60.    When using a cellular connection to receive or transmit data, a cellular phone typically utilizes a cell tower to make telephone calls, send or receive text messages, send or receive emails, surf the internet, carry out application initiated data transfers, among other things.

61.    Based on my training and experience, I know that the wireless provider listed in Attachment A can collect cell-site data about the **Target Telephone**.  Based on my training and experience, I know that for each communication (including data connections) a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers, such as the wireless provider listed in Attachment A typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

Affidavit of SA Provenzale - 17
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

62.     Different service providers use different systems, applications, and reports to collect or analyze cell site data.  These systems, applications, and reports are referred to by a variety of names including, but not limited to real-time tool or "RTT" (Verizon), Periodic Location Updates or "PLU" (Verizon), per call measurement data or "PCMD" (Sprint), Network Event Location System or "NELOS" (AT&T), EVDO, ALULTE, Timing Advance, and TruCall.  RTT data, for example, estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower.  This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

63.     Based on my training and experience, I know that wireless providers such as the wireless provider listed in Attachment A typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.  I also know that wireless providers such as the wireless provider listed in Attachment A, typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Telephone**'s user or users and may assist in the identification of co-conspirators.

64.     Modern cell phones allow users to switch their telephone numbers, use multiple telephone numbers on a single device, and transfer their telephone number to a different cell phone.  These changes can be made with the assistance of the wireless provider or by taking actions such as changing the "SIM card" (short for "subscriber identity module card") of a cellphone.  To provide for any such changes made to the **Target Telephone**, Attachment A specifies that the property to be searched includes:

Affidavit of SA Provenzale - 18
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

## AUTHORIZATION REQUEST

65.     Based on the foregoing, I request that the Court issue the proposed search warrant and pen-trap order, pursuant to Federal Rule of Criminal Procedure 41, 18 U.S.C. § 2703(c), and  18 U.S.C. § 3123.

66.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice to the subscriber or user of the **Target Telephone** until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the **Target Telephone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire

Affidavit of SA Provenzale - 19
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

67.     I further request that the Court direct the wireless provider listed in Attachment A to disclose to the government any information described in Attachment B that is within the possession, custody, or control of.  I also request that the Court direct the wireless provider listed in Attachment A to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the wireless provider's services, including by initiating a signal to determine the location of the **Target Telephone** on the wireless provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The agency shall reasonably compensate the wireless provider listed in Attachment A for reasonable expenses incurred in furnishing such facilities or assistance.

68.     Pursuant to 18 U.S.C. § 2703(g), the government will execute this warrant by serving the warrant on the wireless provider listed in Attachment A.  Because the warrant will be served on the wireless provider listed in Attachment A, who will then compile the requested records and data, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.  I therefore request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephone** outside of daytime hours.

Geoffrey Provenzale
Special Agent
Drug Enforcement Administration

Affidavit of SA Provenzale - 20
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    The above-named agent provided a sworn statement to the truth of the foregoing

2   affidavit by telephone on 28th day of May, 2021.

3

4

5   _____

6   The Hon. Brian A. Tsuchida
    United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# EXHIBIT 1

2

3

## DECLARATION

4
I, Vincent T. Lombardi, declare as follows:

5
1.      I am a duly appointed Assistant United States Attorney for the Western

6
District of Washington, and I have primary responsibility for representing the interests of

7
the United States herein.

8
2.      I make this declaration in support of an application for a search warrant

9
pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with

10
an integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123.  Pursuant to 18

11
U.S.C. § 3122(a)(1), I am the applicant for purposes of the pen-trap portion of the

12
requested warrant and order.

13
3.      Pursuant to 18 U.S.C. § 3122(b), I certify that HSI and DEA are the law

14
enforcement agencies conducting the investigation in this matter and that the information

15
likely to be obtained from the requested warrant is relevant to an ongoing criminal

16
investigation being conducted by that agency.

17
Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

18
Application is made on the basis of information officially furnished, and on that basis I

19
verily believe such information to be true.

20
Executed this 28th day of May 2021.

21

22
_/s/ Vincent T. Lombardi_
VINCENT T. LOMBARDI

23
Assistant United States Attorney

24

25

26

27

28

EXHIBIT 1 -- PAGE 1
USAO #2021R00628 (TT2)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970